**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Michael DeAngelis

   v.                                          Civil No. 06-cv-376-PB

New Hampshire
State Prison, et al.

**REPORT AND RECOMMENDATION**

Pro se plaintiff Michael DeAngelis ("DeAngelis") is a prisoner at the New Hampshire State Prison ("NHSP") who brought this civil rights action under 42 U.S.C. § 1983 challenging the conditions of his confinement. Currently before the court is plaintiff's motion for a "TRO and emergency preliminary injunction." Documents no. 1 and 7. An evidentiary hearing was held on January 11, 2007. For the reasons set forth below, I recommend plaintiff's motion for preliminary injunctive relief be denied.

**Discussion**

1. Standard of Review

Preliminary injunctive relief is available only if the movant demonstrates a need for protection against irreparable harm, to enable a meaningful disposition of the underlying

dispute.  See CMM Cable Rep. v. Ocean Coast Props., 48 F.3d 618, 620-1 (1st Cir. 1995)(explaining the purpose of enjoining certain conduct as being to "preserve the 'status quo' . . . to permit the court more effectively to remedy discerned wrongs").  Irreparable harm is harm that cannot be adequately redressed with traditional legal or equitable remedies following a trial.  See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18 (1st Cir. 1996) (finding irreparable harm where legal remedies are inadequate); see also Acierno v. New Castle County, 40 F.3d 645, 653 (3rd Cir. 1994) (explaining irreparable harm and its effect on the contours of preliminary injunctive relief).  The court's focus, therefore, is on what needs to be done to ensure that the merits of the underlying dispute can be meaningfully resolved.

    To demonstrate the need for a preliminary injunction, plaintiff must satisfy the following four factors:  "(1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of

the court's ruling on the public interest." Esso Standard Oil Co. v. Monroig-Zavas, 445 F.3d 13, 18 (1st Cir. 2006) (discussing the requisite showing to obtain a preliminary injunction); see also Ross-Simons of Warwick, Inc., 102 F.3d at 18-19 (explaining the burden of proof for a preliminary injunction).  If the plaintiff is not able to show a likelihood of success on the merits, the remaining factors "become matters of idle curiosity," id., insufficient to carry the weight of this extraordinary relief on their own.  See id. (the "sine qua non of this four-part inquiry is likelihood of success on the merits") (internal quotation omitted).  Yet, "the predicted harm and the likelihood of success on the merits must be juxtaposed and weighed in tandem."  Ross-Simons of Warwick, Inc., 102 F.3d at 19.

2.  Analysis

DeAngelis bases his request for injunctive relief on four of the claims asserted in his complaint, although at the evidentiary hearing he proffered evidence in support of all his claims.  His two principal complaints pertain to his complicated history of medical problems, principally stemming from his high blood pressure, and his social difficulties at the NHSP, which have led to two separate and severe attacks by other inmates.  He has

broken down these complaints into the following claims:

    1) Failure to protect – negligent supervision of inmates caused plaintiff to be attacked twice, on December 21, 2005 while housed in the general prison population and on September 25, 2006 shortly after being transferred to the Secure Psychiatric Unit of the NHSP ("SPU");

    2) Denial of medical care – refusal to provide plaintiff with high blood pressure medication which has caused him impaired vision, dizziness and other complications;

    3) Retaliation – opening of plaintiff's privileged medical communications by NHSP staff, and limiting plaintiff's use of request slips and grievance forms;

    4) Denial of mail – refusal to deliver mail.

The complaint also asserts a due process claim based on a disciplinary hearing on January 7, 2006, about which DeAngelis testified but also for which he has not sought, nor would the facts support, injunctive relief.

    The evidence proffered at the hearing demonstrated well that while DeAngelis may have viable claims, his current placement in the SPU is providing him with the medical care he requires and is protecting him from any present or imminent irreparable harm. Specifically, the SPU is a medical unit with round-the-clock nursing staff and physicians available on an "on call" basis, 24 hours a day. DeAngelis has received his medications since being

housed there, and can receive medical care without filing a request slip to go to medical call. The evidence also showed that the attack he suffered in September 2006 was unanticipated, and that the following day, when the inmate who attacked him again exhibited aggression toward DeAngelis, the guards knocked the inmate to the ground to protect DeAngelis. That inmate has been moved away from DeAngelis and added to his "Keep Away List," which identifies inmates who should not be proximate to one another for safety reasons. DeAngelis has not alleged any other attacks or abuse. This evidence demonstrated that while DeAngelis may have suffered physical harm in the past, he is not presently.

I also did not find that the conduct allegedly giving rise to his retaliation claims in any way was causing him irreparable harm to justify injunctive relief. The "denial of mail" claim appears to be related to this retaliation claim, because both generally challenge DeAngelis' ability to seek and obtain help from the NHSP.[1] DeAngelis complained about the grievance

---

[1] DeAngelis also complained about simply not receiving mail on Saturdays in SPU, when the general population at the NHSP did. The evidence amply demonstrated, however, that there was nothing retaliatory or personal to DeAngelis about this limited mail delivery, but that it is the policy of the SPU.

procedures at the NHSP and his denied access to them.  In support of this, he cited the restricted number of request slips he is allowed, which have been prerequisites to obtaining a grievance form.  He also asserted that these forms have been opened and photocopied by his counselor at the prison, and suggested that the counselor was screening which claims were processed.  He was upset that the counselor was reading this "mail," because it contained privileged and confidential information.  Finally DeAngelis asserted that the slow processing of his grievances has precluded him from obtaining review of his claims.

    While again these problems may have occurred and may support legitimate claims in DeAngelis' underlying § 1983 action, the evidence indicated that they no longer persist.  In particular, Lieutenant Paul Cascio, who is in charge of the SPU, testifed about changes he has implemented to the request and grievance procedure there.  He has instituted a new policy which allows inmates to bypass the request slip stage and file a grievance form directly.  He also makes daily rounds, to have direct access to the inmates and first-hand knowledge of their issues. Finally, the evidence showed that the limited number of request slips and grievance forms imposed on DeAngelis is part of his

treatment plan, because of his pattern of excessive use of them. The evidence demonstrated that DeAngelis still has frequent access to the forms.  More importantly, he has daily access to Lieutenant Cascio, who evinced a sincere interest in responding to DeAngelis' needs.

   After carefully considering this evidence, I do not find any threat of imminent harm to DeAngelis.  DeAngelis admitted he is satisfied with the conditions of his confinement in SPU. Although discussions are ongoing about moving him out of SPU, an appropriate alternative placement has not yet been determined. DeAngelis conveyed at the hearing some concern and fear about being moved out of SPU.  Defendants persuaded me, however, that his future placement is being carefully considered by various staff members involved with DeAngelis' treatment, and that they will not return him to an environment where his physical or mental health will be endangered.  As things currently stand for DeAngelis, I cannot find any basis to conclude that he is at risk of suffering irreparable harm presently, immediately, or pending final disposition of his underlying claims.  Accordingly, I recommend that his motions for preliminary injunctive relief, documents no. 1 and 7, be denied.

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); see also Unauthorized Practice of Law Committee v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

                                                _____
                                                James R. Muirhead
                                                United States Magistrate Judge

Date:   January 12, 2007

cc:     Andrew B. Livernois, Esq.
       Michael DeAngelis, *pro se*