UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Michael DeAngelis

    v.                                                    Civil No. 06-cv-376-PB

New Hampshire State Prison, et al.

**REPORT AND RECOMMENDATION**

Pro se plaintiff Michael DeAngelis has filed an amended complaint, pursuant to 42 U.S.C. § 1983, alleging violations under the First, Eighth and Fourteenth Amendments[1] to the United States Constitution (document nos. 1, 8-9, 20-21 and 24). Named as defendants are William Wrenn, Commissioner of the New Hampshire Department of Corrections ("NHDOC"), the New Hampshire State Prison ("NHSP") and several NHSP employees.[2]

---

[1] In addition, DeAngelis broadly alleges Sixth Amendment and state law claims but fails to provided any predicate facts in support of those claims. I therefore construe his complaint to allege only claims under the First, Eighth and Fourteenth Amendments.

[2] Named as defendants are the following NHSP employees: Bruce Cattell, Warden; Larry Blaisdell, Acting Warden; Greg Crompton, Deputy Warden; Robert McLeod, Medical Director; Donna Timulty, Medical Supervisor; nurses Tammy, Brad, Fran, Michelle and Brett Mooney; Robert McGrath, Counselor; Lucy Bilodeau Unit Manager; corrections officers Ross Cunningham, Morin, Hickman, Marshall, O'Brien, Burrows, Hogan, S. Howland, Carroll and P. Cascio; Jan Moor-Simons, Supervisory Law Librarian; and Becky Harding, Law

The complaint is before me for preliminary review to determine whether, among other things, it states a claim upon which relief may be granted. See 28 U.S.C. § 1915A; U.S. District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2). For the reasons stated below, I find that DeAngelis has stated the following claims: (1) an Eighth Amendment failure to protect claim against the NHSP, O'Brien, Burrows, Carroll, Hogan, Wrenn, Cattell, Crompton, Cunningham, Howland and the unnamed corrections officers; (2) an Eighth Amendment denial of adequate medical care claim against MacLeod, Michelle, Tammy, Fran, Brad, Timulty, Mooney, O'Brien, Burrows, Carroll and Hogan; and (3) a First and Fourteenth Amendment retaliation claim against Bilodeau, McGrath and Cascio. I recommend dismissal of all remaining claims.

Also filed are two declarations stating that DeAngelis has sufficiently exhausted administrative remedies pursuant to 42 U.S.C. § 1997(e) (document nos. 8 and 21). Following an evidentiary hearing held on January 11, 2007, his request for preliminary injunctive relief (documents. nos. 1 and 7) was denied (document no. 14). His subsequent request for preliminary

---

Librarian.

injunctive relief (document no. 15) was denied by endorsed order on February 1, 2007.

## Standard of Review

In reviewing a pro se complaint, this court must construe the pleading liberally and in favor of the pro se litigant. See Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976)). At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true. See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)(stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true). This review ensures that pro se pleadings are given fair and meaningful consideration. See Eveland v. Director of CIA, 843 F.2d 46, 49 (1st Cir. 1988). I apply this standard in reviewing DeAngelis' complaint.

## Background

Viewing the factual allegations in the complaint in the light most favorable to DeAngelis, the material facts are as follows. DeAngelis is an inmate at the NHSP who has been confined to the Secured Psychiatric Unit ("SPU") since

approximately September 18, 2006. Prior to DeAngelis' confinement in the SPU, prison officials allegedly subjected him to various constitutional deprivations in violation of his federally protected rights under the First, Eighth and Fourteenth Amendments. DeAngelis alleges that prison officials failed to protect him from attack by other inmates, denied him adequate medical care and denied him due process during a disciplinary hearing. He further alleges that prison officials retaliated against him for filing administrative grievances and denied him meaningful access to the courts. He now brings this action pursuant to Section 1983, alleging that defendants' acts and omissions rise to the level of constitutional deprivations.

## Discussion

I.  Section 1983 Claims

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal law. See 42 U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981); Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997). In order to be held liable for a violation under Section 1983, a defendant's conduct must have been a cause in fact of the alleged constitutional deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62

(1st Cir. 1997). The premise of DeAngelis' Section 1983 action is that prison officials subjected him to the following constitutional deprivations in violation of his rights under the First, Eighth and Fourteenth Amendments to the United States Constitution.

   A.   Failure to Protect

   DeAngelis alleges that on two occasions, defendants abridged his Eighth Amendment rights by placing him in danger and failing to protect him from an attack by other inmates.

   Prison officials have an obligation to protect prisoners from violence at the hands of other prisoners. See Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citation omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." Id. "Rather, liability attaches only when two requirements are met". Espaillat v. Mousseau, Civ. No. 03-338-SM, 2004 WL 2915287, slip op. at *2 (D.N.H. Dec. 16, 2004). First, the alleged deprivation must be objectively serious, that is, showing that the inmate is incarcerated under conditions posing a substantial risk of serious harm. See Burrell v. Hampshire County, 307 F.3d 1, 7-8

(1st Cir. 2002) (citation omitted).  Second, the official involved must have had a sufficiently culpable state of mind, described as "deliberate indifference" to inmate health or safety.  Id.  "[A] prison official 'cannot be found liable . . . for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Espaillat, Civ. No. 03-338-SM, 2004 WL 2915287, slip op. at *2 (citing Farmer, 511 U.S. at 837).

    Here, DeAngelis alleges that on December 21, 2005, he was attacked by another inmate "on the R & D recreation" area and sustained physical and mental injuries.  The following defendants allegedly failed to protect him and failed to provide adequate supervision to ensure his safety: O'Brien; Burrows; Carroll; Hogan; Wrenn; Cattell; Crompton; and Cunningham.  DeAngelis further alleges that on September 25, 2006, he was attacked by another inmate and sustained additional physical and mental injuries.  Howland and "other unknown officers" allegedly failed to protect him and failed to provide adequate supervision to

ensure his safety.  The record is silent as to the nature and extent of the injuries sustained by DeAngelis during each attack.  If true, these allegations state cognizable Eighth Amendment claims against, premised on the failure to protect, against O'Brien; Burrows; Carroll; Hogan; Wrenn; Cattell; Crompton; Cunningham; Howland and the unnamed corrections officers[3].

    B.    Denial of Adequate Medical Care

DeAngelis alleges that defendants abridged his Eighth Amendment rights by denying him prescribed medications and adequate medical care.  He further alleges that defendants

---

[3] If DeAngelis wishes to pursue claims against the unnamed corrections officers, he will have to obtain the defendants' full names through discovery and appropriately move to amend the complaint.  He can serve the named defendants with interrogatories to obtain the full names of the unnamed defendants pursuant to Fed. R. Civ. P. 33(a), which states in pertinent part:

> Without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts, to be answered by the party served or, if the party served is a public or private corporation or a partnership or association or governmental agency, by an officer or agent, who shall furnish such information as is available to the party.

DeAngelis is further instructed to forward a summons to this Court with each defendant's proper name.

punished him for requesting his prescribed medications.

To state an Eighth Amendment claim premised on inadequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." See Estelle, 429 U.S. at 97. In order to be found deliberately indifferent, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. Deliberate indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison personnel "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Id., at 104-05.

"A 'serious medical need' is one 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" See Mahan v. Plymouth County House of Corrections, 64 F.3d 14, 17-18 (1st Cir. 1995)(quoting Gaudreault v. Salem, 923 F.2d 203, 208 (1st Cir. 1990).

Here, DeAngelis has alleged sufficient facts to state an Eighth Amendment claim for the denial of adequate medical care.

First, he has described serious medical needs, including high blood pressure, asthma and acid reflux disease, for which he has been prescribed medications.  See Garvin v. Armstrong, 236 F.3d 896, 898 (7th Cir. 2001)(holding that "asthma, depending upon its degree, can be a serious medical need" under the Eighth Amendment); Lyerly v. Koenigsmann, No. 04 Civ. 3904 (PKC), 2006 WL 1997709 at *5 (S.D.N.Y. July 17, 2006)(finding asthma to constitute a sufficiently serious medical condition under the Eighth Amendment).  See also Pandey v. Freedman, 66 F.3d 306, 1995 WL 568490 at *3 (1st Cir. 1995) (unpublished) (holding that "the denial of prescribed medication (for diabetes and high blood pressure) could constitute a sufficiently serious harm" but concluding that "the complaint fails to allege facts which would support a finding of 'deliberate indifference.'").  See also Cole v. Litscher, No. 04-C-116-C, 2005 WL 1075515 at *6 (W.D. Wis. May 6, 2005) (holding high blood pressure to constitute a serious medical need under the Eighth Amendment).  See also Halpin v. Simmons, 33 Fed. Appx. 961, 2002 WL 700936 at *2 (10th Cir. 2002) (unpublished) (holding that allegations of "failure to take reasonable steps to treat [prisoner's] acid reflux, hernia and water retention, and to accommodate his health-related and

dietary and exercise needs" are sufficient to state an Eighth Amendment claim).  The denial of high blood pressure medication allegedly has caused DeAngelis impaired vision, dizziness and other complications.

Second, DeAngelis has demonstrated deliberate indifference with respect to the defendants by alleging that once they had knowledge of his serious medical needs, they nevertheless denied him adequate care or failed to ensure that he received proper care.  From June 24, 2006 through July 28, 2006, DeAngelis allegedly was denied prescribed medications by MacLeod, Michelle, Tammy, Fran, Brad, Timulty and Mooney.  Construed liberally, the complaint alleges that each defendant had knowledge of DeAngelis' medical condition but nevertheless denied his repeated requests for prescribed medications.  As a result of defendants' actions, DeAngelis allegedly suffered physical and mental injury.

Without identifying a defendant, DeAngelis further alleges that he was twice denied prescribed medications and medical treatment during sick call.  He also alleges that on December 26, 2006, O'Brien, Burrows, Carroll and Hogan denied him medical attention when he "called medical emergency" due to "dizziness and high blood pressure."  On that day, O'Brien, Burrows, Carroll

10

<dd>
<dt></dt>
</dd>

and Hogan allegedly punished DeAngelis for requesting medications to treat his high blood pressure.  Instead of providing the requested medications, defendants allegedly issued a disciplinary report against DeAngelis, stripped him of his clothing, denied him food and placed him in a cold holding tank.

If true, the above allegations may demonstrate that defendants prevented DeAngelis from receiving prompt and essential dental treatment for a serious condition.  Accordingly, I conclude that DeAngelis has stated sufficient facts for an Eighth Amendment claim premised upon the denial of adequate medical care against MacLeod, Michelle, Tammy, Fran, Brad, Timulty, Mooney, O'Brien, Burrows, Carroll and Hogan.[4]

### C. Denial of Due Process

DeAngelis alleges that Morin abridged his Fourteenth Amendment right to due process by denying him the opportunity to present witnesses and evidence during a disciplinary hearing.

The Fourteenth Amendment guarantees that no State shall

---

[4]DeAngelis has not provided the last names of four defendants: Michelle; Tammy; Fran; and Brad.  As explained previously, if he wishes to pursue claims against the improperly named defendants, he will have to obtain their full names through discovery, pursuant to Fed. R. Civ. P. 33(a), and appropriately move to amend the complaint.  DeAngelis is further instructed to forward a summons to this Court with each defendant's proper name.

"deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. In order to assert a Fourteenth Amendment due process claim, a plaintiff must allege that he was deprived of a liberty interest protected by the Constitution or by state law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citing Haines v. Kerner, 404 U.S. 519 (1972); Dominique v. Weld, 73 F.3d 1156, 1158 (1st Cir. 1996). In order to state a due process violation in the context of a disciplinary hearing, therefore, a prisoner must identify a liberty interest of which he was deprived. See Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Such a liberty interest is, generally, "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484 (internal citations omitted).

In this action DeAngelis, a sentenced inmate at the NHSP, alleges that during the course of his disciplinary hearing, Morin denied him the opportunity to present witnesses and evidence. Subsequently, DeAngelis was found guilty of the disciplinary infraction "not standing for count" for which he was sanctioned

to "5 days in punitive segregation suspended for ninety days" and the loss of canteen privileges for 15 days. Despite DeAngelis' assertions to the contrary, the record does not reveal that the sanctions imposed were so severe that they were not a typical and reasonably foreseen part of prison life. Accordingly, I find that DeAngelis has not alleged a liberty interest of which he was deprived and therefore conclude that he has failed to state a cognizable Fourteenth Amendment due process claim against Morin.

D.   Retaliation

DeAngelis alleges that Bilodeau and McGrath threatened him with a prison transfer and punitive segregation, restricted his access to grievance forms and interfered with his mail, all in retaliation for his filing of administrative grievances. He further alleges that Cascio retaliated against him by filing a false disciplinary report.

To prevail on a retaliation claim, an inmate must show: (1) conduct which led to the alleged retaliation was constitutionally protected; (2) that he suffered some adverse action at the hands of prison officials; and (3) that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). It is well-established that prisoners have a First

13

Amendment right to petition the government for redress of grievances, and prison officials may not retaliate against prisoners for exercising that right.  See Shabazz v. Cole, 69 F. Supp. 2d 177, 197 (D. Mass. 1999).  See also Walker v. Thompson, 288 F.3d 1005, 1008-09 (7th Cir. 2002) (holding that inmates are entitled under the First Amendment to file grievances and lawsuits, and officers may not retaliate against them for exercising that right).

 Here, DeAngelis alleges that Bilodeau and McGrath threatened him with a prison transfer and punitive segregation, restricted the number of grievance he was allowed to file, photocopied his grievances and opened and read his mail, all in retaliation for his filing of administrative grievances.  He further alleges that Cascio filed a false disciplinary report against in retaliation for his filing an administrative grievance.  Construed liberally, the complaint alleges that DeAngelis engaged in constitutionally protected conduct through the filing of administrative grievances.  DeAngelis further alleges that defendants' retaliatory actions were motivated by his filing of administrative grievances and therefore were taken against him in reprisal for his exercise of First Amendment freedoms.  Accepting DeAngelis' allegations as true, which I must do at this

14

preliminary stage of the proceedings, I conclude that he has stated a cognizable First and Fourteenth Amendment retaliation claim against Bilodeau, McGrath and Cascio.

    E.    <u>Denial of Meaningful Access to the Courts</u>

DeAngelis alleges that McGrath, Bilodeau, Harding, Moor-Simons, Wrenn and Cattell denied him meaningful access to the courts in violation of his Fourteenth Amendment right to due process. Specifically, he alleges that McGrath and Bilodeau denied him grievance forms and also opened, read, photocopied and confiscated his privileged mail outside of presence. Harding, Moor-Simons, Wrenn and Cattell allegedly denied him photocopies of legal documents.

"There is a fundamental constitutional right of access to the courts, founded both in the First Amendment guarantee of [the] right to petition for redress of grievances, and in the due process clause which assures that no person will be denied the opportunity to present to the courts their claims concerning violations of fundamental constitutional rights." <u>McDuffy v. Koval</u>, 226 F. Supp. 2d 541, 548 (D. Del. 2002)(citations omitted). The right of access to the courts is strongest in the context of constitutional claims and other civil rights actions. <u>See</u> <u>BreMiller v. Cleveland Psychiatric Inst.</u>, 898 F. Supp. 572,

582 (N.D. Ohio 1995). To establish a claim for denial of access to the courts, a plaintiff must show that he was denied access to the courts and suffered actual injury, such as interference with his efforts to pursue a claim. See McDuffy, 226 F. Supp. 2d at 548.

Accepting DeAngelis' allegations as true, I conclude that he has failed to allege any relevant actual injury that resulted from the alleged denial of access to the courts. While he claims that defendants interfered with his privileged mail and denied him grievance forms, DeAngelis has not alleged any ensuing constitutional harm related to the acts or omissions by any of the defendants. Nor has he identified any act or omission by any defendant that frustrated or impeded a specific legal claim pursued by DeAngelis. Without demonstrating that defendants' alleged interference prevented him from participating meaningfully in the legal process, DeAngelis fails to allege any constitutional deprivation. Accordingly, I recommend dismissal of this claim in its entirety.

## II. Official Capacity Claims

Construed liberally, the complaint seeks declaratory, injunctive and monetary relief for wrongs committed by the defendants as state actors in their official capacities. It is

well-settled that the Eleventh Amendment bars suits against state entities and state agents working in their official capacities unless the state has expressly waived immunity, which has not been done by New Hampshire for actions brought under Section 1983.  See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court); Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)(holding that neither a state nor its officials acting in their official capacities are "persons" under Section 1983).  Official capacity suits against officers of an agency are simply "another way of pleading an action against an entity of which an officer is an agent."  Monell, 436 U.S. at 690 n.55.  To the extent DeAngelis brings official capacity claims for monetary relief against the defendants, all of whom are officials or employees of the NHDOC or NHSP, I recommend that those claims be dismissed.

On the other hand, official capacity actions against state actors for prospective injunctive relief are not treated as actions against the state and may be considered under Section 1983.  See Will, 491 U.S. at 71 n.10; Ex parte Young, 209 U.S. 123, 159-60 (1908).  Thus, DeAngelis is not barred from bringing

claims for prospective injunctive relief against the defendants in their official capacities.

## Conclusion

For the reasons stated above, I find that DeAngelis has stated the following claims: (1) an Eighth Amendment failure to protect claim against the NHSP, O'Brien, Burrows, Carroll, Hogan, Wrenn, Cattell, Crompton, Cunningham, Howland and the unnamed corrections officers; (2) an Eighth Amendment denial of adequate medical care claim against MacLeod, Michelle, Tammy, Fran, Brad, Timulty, Mooney, O'Brien, Burrows, Carroll and Hogan; and (3) a First and Fourteenth Amendment retaliation claim against Bilodeau, McGrath and Cascio.  I recommend dismissal of all remaining claims.

If this recommendation is approved, the claims as identified in this report and recommendation, will be considered for all purposes to be the claims raised in the complaint.  If the plaintiff disagrees with the identification of the claims herein, plaintiff must do so by filing an objection within ten (10) days of receipt of this report and recommendation, or by properly moving to amend the complaint.

Any further objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.

Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); <u>Unauthorized Practice of Law Committee v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date: April 30, 2007

cc:    Michael DeAngelis, pro se